Paul M. Murphy
SVRB 8232
Saipan, MP. 96950
(670) 484-6136
paul.murphy.officialmail@gmail.com

FILED
Clerk
District Court

APR - 7 2015

for the Northern Mariana Islands
By_____
(Deputy Clerk)

## US District Court for the Northern Marianas Islands

| | |
|---|---|
| Paul Murphy ) | Case No.: |
| Plaintiff ) | CV 14-0026 |
| ) | |
| vs ) | |
| ) | |
| JAMES C. DELEON GUERRERO, in his official capacity as Commissioner of the Department of Public Safety of the COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS (CNMI), | |
| | |
| LARISSA LARSON, in her official capacity as the Secretary of the Department of Finance of the COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS (CNMI), | |
| | |
| Defendants, | |

"AMENDED"

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Paul M. Murphy, pro se for Complaint against the Defendants allege as follows:

## INTRODUCTION

1. This is an action pursuant to 42 U.S.C. § 1983 for deprivation of civil rights under color of law, which seeks equitable, declaratory, and injunctive relief from the CNMI's prohibition on the importation and ownership of firearms and ammunition of bore diameter in calibers other than .22 and .410, including all handguns; and the prohibition of carrying such firearms for the purposes of self-defense; and for the infringement upon these rights through the administration of these prohibitions through licensing and fees; otherwise protected by the Second and Fourteenth Amendments.

2. The Second Amendment, "The right of the people to keep and bear arms shall not be infringed..." guarantees, "the lawful defense of self, family, and property" with respect specifically to handguns. *District of Columbia v. Heller, 554 U.S., (2008)*; and this "right is fully applicable to the states"; and "is a privilege of American Citizenship recognized by § 1 of the Fourteenth Amendment". *McDonald v. City of Chicago, 561U.S. (2010)*.

3. In, 1975, the United States and the CNMI entered into the *Covenant to Establish a Commonwealth of the Northern Marianas Islands in Political Union with The United States of America* ("Covenant") that the CNMI would have Commonwealth status, which was signed into law by the U.S. Congress in 1976 and fully implemented in November, 1986.

4. Pursuant to Section 501(a) of the Covenant, in reference to Section 1 of the Fourteenth Amendment to the United States Constitution the Second Amendment is applicable to the CNMI.

5. Jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(3) in that this actions seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the CNMI of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

6. This actions seeks relief pursuant to 28 U.S.C. §§ 2201-2202 and 42 U.S.C. §§ 1981(a), 1983. Venue lies in this district pursuant to 28 U.S.C. § 1391.

## PLAINTIFF

7. Plaintiff (Pro se) Paul Murphy is a U.S. national born in the state of Nebraska, a U.S. Citizen holding a valid U.S. Passport, of Northern Marianas Descent, and a resident of Saipan, CNMI. He is U.S. Army veteran deploying in support of both Operation Enduring Freedom (Afghanistan) and Operation Iraqi Freedom (Iraq) in the Global War on Terror. He has served as a school teacher with Troops to Teachers at a number of Public Schools and is currently an educator with Marianas Baptist Academy.

## DEFENDANTS

8. Defendant, James C. Deleon Guerrero, in his official capacity as Commissioner of the Department of Public Safety of the CNMI, is responsible for enforcing the CNMI's laws, customs, practices, and policies. In that capacity, Commissioner Deleon Guerrero presently enforces the laws, customs, practices, and policies complained of in this action, and is sued in both his individual and official capacities. Specifically, Commissioner Deleon Guerrero is the authority declaring the Department of Public Safety is satisfied that an applicant may lawfully possess and use or carry the firearm, dangerous device or ammunition stated on the identification card.

9. LARISSA LARSON, in her official capacity as the Secretary of the Department of Finance, is accountable for the practices and policies of the Customs Service which under 6 CMC 2302 enforces provisions of the CNMI Weapons Control Act complained of in this action, and is sued in both her individual and official capacities.

## STATUTORY BACKGROUND

10. The CNMI has a statute called the Commonwealth Weapons Control Act (6 CMC §§ 2201-2230). Section 2202 of the Act (6 CMC § 2202) states, "No person may manufacture, purchase, sell, possess or carry any firearm, dangerous device or ammunition other than as provided in this article."

11. Further, 6 CMC § 2204 states, "No person may acquire or possess any firearm, dangerous device or ammunition unless the person holds an identification card issued pursuant to this article."

12. Also, 6 CMC § 2206 states, "No person may carry a firearm unless the person has in his or her immediate possession a valid identification card, and is carrying the firearm unloaded in a closed case or other securely wrapped or closed package or container, or locked in the trunk of a vehicle while en route to or from a target range, or area where the person hunts, or takes part in other sports involving firearms, or carries the firearm in plain sight on his or her person while actively engaged in hunting or sports involving the use of firearms." The definition provided for "carry" "means having on one's person" (6 CMC § 102(b)).

13. Additionally, 6 CMC § 2219(b) states, "The issuing officer or agency may deny, suspend or revoke and identification card or a license issued pursuant to this chapter for failure of the applicant or holder to meet or continue to meet any of the requirements for eligibility there therefore, or for any violation of this article or regulations in force pursuant to it..."

14. Furthermore, 6 CMC § 2222(e) ["Prohibited Acts. No person shall:"] "Import, sell, transfer, give away, purchase, possess or use any handgun, automatic weapon or ammunition other than:"

15. Moreover, 6 CMC § 2223 states, "All firearms, dangerous devices or ammunition unlawfully possessed, carried, used, shipped, transported or delivered into the

Commonwealth are declared to be inimical to the public safety and are forfeited to the Commonwealth. When such forfeited articles are taken from any person, they shall be surrendered to the Department of Public Safety." "Inimical" being defined by the American Heritage Dictionary as, "Injurious or harmful in effect [.]"

16. Additionally, 6 CMC § 2227 states, "Nothing in this article shall be deemed to prevent any local government from further restricting, by local law or ordinance, the transfer, possession, use or carriage of firearms, ammunition or dangerous devices. This chapter shall supersede all district laws and municipal ordinances in conflict with this article.

17. Also, 6 CMC § 2228 states, "The Department of Public Safety may issue, amend, repeal regulations implementing this article in the manner which is or may be provided by law, as may be required by the public interest, safety and welfare.

18. Further, 6 CMC § 2229 states, "The fees for issuance and renewal of annual licenses and identification cards as required by this article shall be as follows: (a) For the identification card, $25; (b) For a dealer's license, $300; (c) For a manufacturer's license, $1000; (d) For a wholesaler's license, $1000; (e) For replacement of lost, destroyed, or defaced identification card, $10."

19. In addition, 6 CMC § 2230 (b) states, "Any person who violates any other provision of this article or any regulation issued pursuant thereto shall be guilty of a felony, and upon conviction thereof, maybe fined not more than $5,000 or imprisoned not more than five years, or both, and may be subject to confiscation of any firearm, dangerous device, or ammunition without compensation, involved in a violation of this article. The holder of any dealer's license or the manager or supervisor of employees of any establishment so licensed, or both, shall be liable for any violation of this article by his or her employee or agent committed in the course of the dealer's business, to the same extent as such employee or agent."

20. Moreover, Administrative Code 150-70-001 states, "(a) Interpretation. The regulations in this chapter shall be construed and applied to promote their underlying purposes and policies and supplement the language and requirements of the Commonwealth Weapons Control Act found at 6 CMC §§ 2201, et seq., as amended by Public Law 6-38. (b) Purposes and Policies. The underlying purposes and policies of the regulations in this chapter are: (1) There has been a serious and alarming increase in the number of crimes committed with firearms and steps must be taken to prevent improper access to firearms by unauthorized persons. (2) Accidents associated with the mishandling of firearms and dangerous devices have injured and killed both adults and juveniles in the Commonwealth. (3) The use of firearms and dangerous devices if not carefully regulated is dangerous to public health and safety.
(4) Limitations on access to firearms and dangerous devices must be enforced to protect the residents of the Commonwealth from accidental or intentional injury from the use of firearms or dangerous devices. (5) These regulations are necessary in order to adequately inform the general public of the requirements of the law."

## STATEMENT OF FACTS

21. Plaintiff (pro se: Paul Murphy, myself) has been and continually is deprived, violated, hurt, oppressed, defenseless, injured, and attacked. On July 20th 2007, while on leave and still officially with the U.S. Army 3rd Ranger Battalion 75th Ranger Regiment, I arrived in Saipan, CNMI. I was brought into an office where a number of agents from different US and CNMI Law Enforcement Offices were stationed around the room. I was questioned as to the acquisition of the items, the legality of the possession of these items, accused of theft, and finally without charge my firearms and ammunition were confiscated. According to 6 CMC § 2205 an identification card is a prerequisite to purchase, possession, and use of a firearm, dangerous device, or ammunition thus criminalizing any individuals coming to or returning with firearms, dangerous devices, or ammunition. This is a criminalization of a Constitutional right. This event was the beginning of grievances for which I have been seeking remediation.

22. The Department of Public Safety withheld all firearms and ammunition without trial or charge till I had completed all the requirements to obtain a Weapons Identification Card pursuant to 6 CMC § 2204.

23. Upon receiving my Weapons Identification Card on September 20, 2007, a portion of my items were issued to me; one L.A.R. AR-15 rifle and my .223 caliber ammunition along with the AR-15 magazines. The other confiscated items were still withheld. Two of the firearms were brought to Guam than to the Guam Police Department Armory by a relative of mine. The ammunition is still currently being held by the CNMI Department of Public Safety Firearms Section.

24. On April 14, 2011, I filed an Application For Weapons Identification Card with DPS to carry and possess my WASR 10/63 rifle. I filed an application in lieu of the DC v Heller and McDonald v Chicago Supreme Court Cases; both recognized and presented to the Seventeenth Northern Marianas Commonwealth Legislature by Representative

Stanley T. McGinnis-Torres as H.B. 17-90 on Thursday, July 22, 2010, 10:03 a.m. My application was rejected on April 14, 2011, with a written "No" on a letter I resubmitted to DPS because the Application For Weapons Identification Card which I submitted previously would not be answered or signed by Commissioner Ramon C. Mafnas.

25. On May 5, 2011, I filed an Application For Weapons Identification Card with DPS to carry and possess my Glock 19 pistol for sport and security. My application was "Disapproved" on May 5, 2011.

26. On June 13, 2011, I filed an Application For Weapons Identification Card with DPS to carry and possess my WASR 10/63 rifle. My application was "Approved" by the Commissioner of DPS on an unknown date between May 24th and June 13th, 2011. When I went to the DPS Firearms and Records Section to update my Weapons Identification Card I was told by the attending officer that he could not complete my request even though my application was approved. He requested that I seek clarification from the DPS Commissioner before completing the Weapons Identification Card. I met with the Commissioner and received no clarification (Deputy Commissioner [at that time] Ambrosio T. Ogumoro was present during the conversation). On April 12, 2012, I was notified via email made by P0II David M. Hosono; that my application to register my WASR 10/63 rifle was disapproved.

27. Beginning on April 29, 2012, I worked on informing CNMI legislators and the public through brochures and online posts about their 2nd Amendment Constitutional Right. On June 7th 2012 and on January 22nd 2013, I submitted requests for the legislative repeal of the CNMI Weapons Control Act and a submission of an alternative legislation titled "Homeland Self-Preservation Initiative" to members of the House of Representatives. No known action was taken.

28. On January 29th 2013, I submitted a notice of protest, duress, and fear in conjunction with an "Application For Weapons Identification Card" to DPS. On March 12th

2013, I was informed that my application for renewal was denied. Instead of finding remediation or relief I was instructed to accomplish more tasks of compliance in addition to what I had already previously endured for my Weapons Identification Card of which heretofore were approved.

29. On August 13, 2013, a request was made by [at the time] Superior Court Associate Judge Joseph N. Camacho for an amicus brief regarding the Commonwealth Weapons Control Act's violation of a defendant's rights under the Second Amendment of the Constitution of the United States and the then Defendant's (Sergio Rangamar) standing to challenge it. I wrote an amicus brief in support of the Defendant's Second Amendment right. The Office of Attorney General dropped the charges of illegal possession of a firearm and illegal possession of ammunition against the Defendant Sergio Rangamar. Still no action was taken to remedy violations under the Weapons Control Act.

30. On July 18th 2013, I submitted a demand letter to the Office of Attorney General first notifying them of the continued abuses perpetrated against me under the color of law and then demanded that my confiscated items be returned to me, the CNMI Weapons Control Act and all associated legislation, licensing, taxation, recording, and the like be repealed; and compensation in the amount of $2,500,000.00 be paid to me for the years of discrimination and trauma these violations have put me through. No known action was taken and I received no response regarding these violations.

31. On November 6th 2014, I submitted a demand letter to the Office of the Attorney General, the Department of Public Safety Commissioner's Office, and the Department of Public Safety Firearms and Record Office. I demanded that firearms belonging to me be turned over to me. No known action was taken and I received no response regarding these violations.

32. On December 17th 2014, I submitted requests for the legislative repeal of the CNMI Weapons Control Act and a submission of an alternative legislation titled "Homeland Self-Preservation Initiative" to members of the House of Representatives. No known action was taken.

33. The Plaintiff (myself [in compliance with the law]), after seeking a redress of grievances and exhausting means for remediation outside of the courtroom has been denied the right to possess and carry firearms in the following categories: handguns and rifles outside the specified range of firearms given in the CNMI Weapons Control Act (WCA). Plaintiff has been denied the right to possess and carry ammunition not specified in the CNMI WCA. Plaintiff has been forced to pay licensing fees and fees associated with obtaining the license or else have his issued firearms and ammunition confiscated. Plaintiff currently has confiscated items still being held in the Department of Public Safety's Armory.

### COUNT I – VIOLATION OF RIGHT OT KEEP AND BEAR ARMS
(Paul Murphy)
(U.S. Constitution. Amendments II and XIV; 42 U.S.C. § 1983)

34. Paragraphs 1 through 32 are realleged and incorporated herein by reference.

35. The ban on handguns, firearms, and ammunition possession contained in 6 CMC § 2222(e), on its face and as applied, violates Plaintiff's individual right to keep and bear arms as secured by the Second Amendment to the United States Constitution.

### COUNT II – VIOLATION OF RIGHT OT KEEP AND BEAR ARMS
(Paul Murphy)
(U.S. Constitution. Amendments II and XIV; 42 U.S.C. § 1983)

36. Paragraphs 1 through 34 are realleged and incorporated herein by reference.

37. The prohibition on possessing and carrying a firearm for self-defense per 6 CMC

§ 2206, § 2207 by itself and coupled with the good cause requirement for qualification for a Weapons Identification Card (WIC), as set forth in Section D2 of the WIC application, on its face and as applied, violates the Plaintiff's individual right to possess a handgun or other firearm for self-defense as secured by the Second Amendment to the United States Constitution.

### COUNT III – VIOLATION OF RIGHT OT KEEP AND BEAR ARMS
(Paul Murphy)
(U.S. Constitution. Amendments II and XIV; 42 U.S.C. § 1983)

38. Paragraphs 1 through 36 are realleged and incorporated herein by reference.

39. The existence and administration of the licensing and renewal of the WIC pursuant to 6 CMC § 2203 (a)(b)(c)(d)(f)(g)(i)(j)(k)(l); 6 CMC § 2205, § 2206, §2215, §2227, § 2228, § 2229, § 2230, § 2301, and § 2303 on its face and as applied, violates the Plaintiff's individual right to possess a handgun, firearm, and/or ammunition without fear of discrimination as to race, color, religion, creed, sex, sexual orientation, gender identity, national origin, ancestry, age, veteran status, disability unrelated to job requirements, genetic information, military service, or other protected status as secured by the Second and Fourteenth Amendments to the United States Constitution.

### FOR ALL COUNTS

40. Paragraphs 1 through 38 are realleged and incorporated herein by reference.

41. A controversy exists as to whether the handgun, firearms, and ammunition prohibitions contained in 6 CMC § 2222 (e) is unconstitutional.

42. A controversy exists as to whether the self-defense prohibition contained in 6 CMC § 2206 and §2207 are unconstitutional.

43. A controversy exists as to whether the good cause requirement for a WIC contained in the CNMI's WIC application or as administered by the Department of Public Safety is unconstitutional.

44. A controversy exists as to whether the existence and administration of the licensing and renewal of the WIC contained in 6 CMC § 2203 (a)(b)(c)(d)(f)(g)(i)(j)(k)(l); 6 CMC § 2205, § 2206, §2215, §2227, § 2228, § 2229, § 2230, § 2301, and § 2303 are unconstitutional.

45. A declaration from this Court would settle these issues.

46. A declaration would also serve a useful purpose in clarifying the legal issues in dispute.

47. In the absence of an injunction, the challenged requirements and restrictions in the CMC would continue to be enforced and would prevent the Plaintiff from (1) obtaining firearms and ammunition for the exercise of his Second Amendment rights, for self-defense, and for defense of family; and (2) from retrieving long held confiscated items.

48. The Plaintiff would continue to suffer irreparable injury if the Court does not issue an injunction.

49. There is no adequate remedy at law because only an injunction would allow the Plaintiff the authority to retrieve his items.

WHEREFORE, Plaintiff prays that this Honorable Court:

1. Issue preliminary and permanent injunctions enjoining Defendant DPS Commissioner James C. Deleon Guerrero from enforcing against the Plaintiff: (a) the prohibitions on virtually all CNMI residents from obtaining handguns for self-defense purposes; (b) the prohibition on obtaining a firearm for self-defense purposes; and (c) the good cause requirement for obtaining a firearm.

2. Enter a declaratory judgment that (a) prohibitions on virtually all CNMI residents from obtaining handguns, firearms, and ammunition not listed in 6 CMC § 2222(e) for self-defense purposes; (b) the prohibition on obtaining a firearm for self-defense purposes; and (c) the good cause requirement for obtaining a firearm are null and void because they infringe on the right of the people to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution; and

3. Award the Plaintiff legal fees and costs pursuant to 42 U.S.C. § 1988.

4. Issue preemption regarding laws making it "harder" to and "infringing" upon the right of the people to obtain firearms, ammunition, and associated items relating to the free exercise of ones' Second Amendment rights.

5. Grant such other and further relief, in law and equity, as the Court deems just and proper.

Dated: April 7, 2015

Respectfully submitted,

By: *Paul Murphy*

Paul Murphy
Plaintiff in Pro Persona

Paul M. Murphy
8232 SVRB
Saipan, MP. 96950
Tel. 1-670-484-6136
paul.murphy.officialmail@gmail.com