Mr. Paul Murphy MA.IS., *Plaintiff*
POBOX 8232 SVRB, Saipan MP 96950
E-mail: paul.murphy.officialmail@gmail.com
Phone #: (670) 484-6136

Signature: _____

Date: _____

F I L E D
Clerk
District Court

JAN 30 2020

for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

PAUL MURPHY,

                Plaintiff,

    v.

ROBERT GUERRERO

           Defendant,

Case 1:14-CV-0026

MOTION FOR CONTEMPT OF COURT

Table of Contents

I.      TABLE OF AUTHORITIES

II.     INTRODUCTION

III.    JURISDICTION

IV.     ISSUE(S) PRESENTED AND STANDARD OF REVIEW

V.      STATEMENT OF THE CASE

VI.     SUMMARY OF ARGUMENT

VII.    ARGUMENT I

VIII.   ARGUMENT II

IX.     CONCLUSION

X.      APPENDIX

## TABLE OF AUTHORITIES

**Federal Cases**                                                    Page No.

Armstrong v. Executive Office of the President, Office of Admin.,
1 F.3d 1274, 1289 (D.C.Cir. 1993)...................................................... 30

Backo v. Local 281.................................................................... 13

Breitenbach v. Bush, 44Pa. 320, 84 Am. Dec. 442............................... 24

Bullock v. United States,
265 F.2d 683, 691-92 (6th Cir.), cert. denied, 360 U.S. 909 (1959).......... 10

Carlson Fuel Co. v. United Mine Workers,
517 F.2d 1348, 1349 (4th Cir. 1975)........................................... 9

Curtis' Petition, 240 F. Supp. 475, 483 (E.D. Mo. 1965),
aff'd, 362 F.2d 999 (8th Cir.), cert. denied, 386 U.S. 914 (1966).............. 12

Eskay, 122 F.2d 819 (3d Cir. 1941).................................................. 17

Emery v. Emery, 9 How. Prac. (N. Y.) 132........................................ 24

Fox v. United States,
77 F.2d 210 (4th Cir. 1935), cert. denied, 298 U.S. 642 (1936)............... 11

Falstaff Brewing Corp. v. Miller Brewing Co.,
702 F.2d 770, 782-783 (9th Cir. 1983)....................................... 9, 14

Floersheim, 316 F.2d 423, 428 (9th Cir. 1963)................................... 15

Gompers v. Bucks Stove & Range Co.,
221 U. S. 418, 442, 449, 452 (1911)........................................ 9, 12

Green v. United States, 356 U.S. 165 (1958)..................................... 10

Joyce, 506 F.2d 373 (5th Cir. 1975).............................................. 14

Manness v. Meyers, 419 U.S. 449 (1975)......................................... 13

McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949)................ 14

Myers, 264 U.S. at 101............................................................ 7

National Labor Relations Board v. Arcade-Sunshine Co.,
122 F.2d 964, 965 (D.C.Cir. 1941)................................................ 11

Nye v. United States, 313 U.S. 33, 42 (1941)..................................... 9

Penfield Co. v. Securities & Exchange Comm'n,
330 U. S. 585, 330 U. S. 590 (1947)............................................ 29

People v.Christerson, 59 111. 158................................................ 24, 29

Reich v. United States,
239 F.2d 134, 137 (1st Cir. 1956), cert. denied, 352 U.S. 1004 (1957)....... 13

Rojas v. United States, 55 F.3d 61 (2nd Cir. 1995)............................. 14

Shillitani v. United States, 384 U.S. 364, 368-70 (1966)....................... 8

Skinner v. White, 505 F.2d 685, 689 (5th Cir. 1974)........................... 9

Stiller v. Hardman, 324 F.2d 626, 628 (2d Cir. 1963)........................... 7

United Brothers of Carpenters and Joiners, 438 F.2d 176,
180-81 (2d Cir. 1970), cert. denied, 404 U.S. 858 (1971)...................... 13

United Corporation, 166 F. Supp. 343 (D.Del. 1958)........................... 12

United States v. Custer Channel Wing Corp., 247 F. Supp. 481, 503
(D. Md. 1965), aff'd, 376 F.2d 675 (4th Cir.),
cert. denied, 389 U.S. 850 (1967)................................................ 17

United States v. Custer Channel Wing Corporation, 376 F.2d 675, 680
(4th Cir. 1967), cert. denied, 389 U.S. 850..................................... 15

United States v. Dimauro, 441 F.2d 428 (8th Cir. 1971)......................... 17

United States v. Fidanean,
465 F.2d 755 (5th Cir.), cert. denied, 409 U.S. 1054 (1972).................... 15

United States v. Goldfarb, 167 F.2d 735 (2d Cir. 1948)......................... 17

United States v. Greyhound Corp., 508 F.2d 529, 532 (7th Cir. 1974)......... 16

United States v. Handler, 476 F.2d 709 (2d Cir. 1973)........................... 10

United States v. Kelsey-Hayes Co., 476 F.2d 265 (6th Cir. 1973).............. 12, 15

United States v. J. Myer Schine, 260 F.2d 552, 555-56, (2nd Cir. 1958),
cert. denied, 358 U.S. 934 (1959)...................................................... 8, 11, 16

United States v. North, 621 F.2d 1255 (3d Cir. 1980),
cert. denied, 449 U.S. 866 (1981)...................................................... 9, 10

United States v. Nynex Corp., 8 F.3d 52, 54 (D.C. Cir. 1993)................. 8, 23, 28, 30

United States v. Patrick, 542 F.2d 381, 389 (7th Cir. 1976),
cert. denied, 430 U.S. 931 (1977)...................................................... 15

United States v. Powers, 629 F.2d 619 (9th Cir. 1980).......................... 9

United States v. Remini, 967 F.2d 754 (2d Cir. 1992)........................... 17

United States v. Robinson, 449 F.2d 925, 930 n. 8 (9th Cir. 1971)........... 10

United States v. Seavers, 472 F.2d 607 (6th Cir. 1973).......................... 17

United States v. Shipp, 203 U.S. 563 (1906)...................................... 9

United States v. Snyder, 428 F.2d 520, 522 (9th Cir. 1970),
cert. denied, 400 U.S. 903 (1970)...................................................... 17

United States v. United Mine Workers of America,
330 U.S. 258, 298-300 (1947)......................................................... 11

United States v. Wefers, 435 F.2d 826, 830 (1st Cir. 1970)..................... 16

United States v. Wilson, 421 U.S. 309, 315 n. 6 (1975).......................... 9

Universal City Studios v. N.Y. Broadway International Corp.,
705 F.2d 94 (2d Cir. 1983). Cf........................................................ 10

Yates v. United States, 316 F.2d 718, 723 (10th Cir. 1963)..................... 15

**Statutes**

18 U.S.C. § 401........................................................................ 7, 10, 14, 16

18 U.S.C. § 401(2)..................................................................... 7, 10

18 U.S.C. § 401(3)..................................................................... 10, 23, 28

18 U.S.C. § 402........................................................................ 7, 16

18 U.S.C. § 3285..................................................................... 8

28 U.S.C. § 1331..................................................................... 7

28 U.S.C. § 1343(3)................................................................. 7

Murphy v CNMI No. 1:2014cv00026 Doc.109...................................... 6, 7, 17, 23

6 CMC § 2204(a), (b)(8), and (c)....................................................... 24, 26

PL 19-73 (SAFE Act II)............................................................... 32

PL 19-73 §601(a)..................................................................... 25

PL 19-73 §606(c)..................................................................... 25

PL 19-73 §701(b)(4) & (c)........................................................... 18, 24, 26, 28

Section 3282 of Title 18............................................................... 7, 16

MOTION FOR CONTEMPT OF COURT - 5

# **INTRODUCTION**

Ten years have passed since the Plaintiff's return from military service thus beginning the process of this judicial saga. Three years have passed since the Plaintiff brought a Second and Fourteenth Amendment Constitutional case before this Federal Court. On September 28, 2016, Judge Ramona Manglona, in case Murphy v. CNMI Government No. 1:2014cv00026 - Document 109 page 53 subsection (a) line 14, ruled the registration of firearms unconstitutional and permanently enjoined the Defendant from enforcing the provisions of the Commonwealth Code declared unconstitutional.

The Defendant, the original party in this case, CNMI Department of Public Safety Commissioner Robert Guerrero; enforced the registration of at least one hundred firearms. These registration numbers are officially documented through at least two different Open Government Act Requests. Included in these registrations is the registration of the Plaintiff's firearm. The Plaintiff notified the Defendant of the unconstitutionality of the action by attaching a notice of duress and protest to the application for a firearms ID.

Before this Court is the Motion for Contempt filed by the Plaintiff Mr. Paul Murphy MA.IS. against the Defendant DPS Commissioner Robert Guerrero (Defendant) for the violation of this Court's permanent enjoinment against enforcing the registration of firearms.

MOTION FOR CONTEMPT OF COURT - 6

## **JURISDICTION**

Jurisdiction is founded on 28 U.S.C. § 1331 in that this action arose under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(3) in that this action sought to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the CNMI of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress and ruled upon by this court in Murphy v. CNMI Case 1:14-CV-00026 Document 109 on the 28th day of September 2016. This action satisfied the threshold requirement imposed by Article III of the Constitution alleging an actual case or controversy and is brought again under 18 U.S.C. § 401 Power of the court and 18 U.S.C. § 402 Contempts constituting crimes. The court wherein proper venue on federal jurisdiction exists in an 18 U.S.C. § 401 proceeding has been generally agreed to be the court which rendered the decree and not the court located in the district where the violation occurred. See Myers, 264 U.S. at 101; Stiller v. Hardman, 324 F.2d 626, 628 (2d Cir. 1963).

This action requests the court to criminally prosecute contempt constituting crimes under 18 U.S.C. § 401 Power of the court and 18 U.S.C. § 402 Contempts constituting crimes. Section 3282 of Title 18 applies a five-year statute of limitations to all criminal contempt actions encompassed by 18 U.S.C. § 401. If, however, the contemptuous act also constitutes a criminal offense under any statute

MOTION FOR CONTEMPT OF COURT - 7

of the United States or under the laws of any state in which the act was committed, then the contempt must be prosecuted under 18 U.S.C. § 402. Under 18 U.S.C. § 3285, a one-year statute of limitations applies to contempt actions brought under 18 U.S.C. § 402. It should be noted, however, that 18 U.S.C. § 402 is inapplicable to "contempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States."

The "continuing act" concept is applicable to criminal contempt actions. United States v. J. Myer Schine, 260 F.2d 552, 555-56, (2nd Cir. 1958), cert. denied, 358 U.S. 934 (1959).

This action does not exceed the statute of limitations under the "continuing act".

## ISSUE(S) PRESENTED AND STANDARD OF REVIEW

Whether the Defendant violated this court's order enjoining the Defendant from enforcing the registration firearms. There are three essential elements under 18 U.S.C. § 401(3). They are: (1) there must be a violation; (2) of a clear and reasonably specific order; and (3) the violation was willful. United States v. Nynex Corp., 8 F.3d 52, 54 (D.C. Cir. 1993).

A contempt is criminal when punishment by way of fine or imprisonment is deemed imperative to vindicate the authority of the court. See Shillitani v. United

MOTION FOR CONTEMPT OF COURT - 8

States, 384 U.S. 364, 368-70 (1966); Nye v. United States, 313 U.S. 33, 42 (1941); Gompers v. Bucks Stove and Range Co., 221 U.S. 418, 442 (1911); Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770 (9th Cir. 1983); In re Rumaker, 646 F.2d 870 (5th Cir. 1980); United States v. Powers, 629 F.2d 619 (9th Cir. 1980); United States v. North, 621 F.2d 1255 (3d Cir. 1980), cert. denied, 449 U.S. 866 (1981); Carlson Fuel Co. v. United Mine Workers, 517 F.2d 1348, 1349 (4th Cir. 1975).

Because the primary aim of a criminal contempt action is vindication of the authority of the court and punishment for disobedience already accomplished, the general rule is that purging of contempt is not a complete defense in a criminal contempt action. Consequently, a person found guilty of criminal contempt may be sentenced to a fixed and definite term of imprisonment, or be required to pay an unconditional fine. See United States v. Shipp, 203 U.S. 563 (1906); Skinner v. White, 505 F.2d 685, 689 (5th Cir. 1974).

Although the courts possess an inherent power to enforce obedience to their orders so that they may properly perform their functions, Myers v. United States, 264 U.S. 95, 103 (1924), the federal courts' contempt power is limited by 18 U.S.C. § 401 and by Rule 42, Federal Rules of Criminal Procedure. See United States v. Wilson, 421 U.S. 309, 315 n. 6 (1975); Nye v. United States, 313 U.S. 33, 45 (1941). Accordingly, all forms of contempt, whether they be criminal, civil,

indirect or direct, must fall within one of the three categories of misbehavior described in 18 U.S.C. § 401. Indirect contempts come within 18 U.S.C. § 401(2) or (3), and the "so near thereto clause" of 18 U.S.C. § 401(1). Direct contempts are confined to the "in presence" clause of 18 U.S.C. § 401(1).

An indirect criminal contempt action must be instituted pursuant to the notice requirements set forth in Rule 42(b) of the Federal Rules of Criminal Procedure. It need not be instituted by a criminal indictment, Green v. United States, 356 U.S. 165 (1958); consequently, the sufficiency of a criminal contempt petition filed under Rule 42(b) is not to be tested by the more stringent standards set for an indictment. See Bullock v. United States, 265 F.2d 683, 691-92 (6th Cir.), cert. denied, 360 U.S. 909 (1959). Furthermore, notice under Rule 42(b) need not be as precise or as detailed as the certificate which the judge is required to prepare in a summary contempt proceeding under Rule 42(a). See United States v. Robinson, 449 F.2d 925, 930 n. 8 (9th Cir. 1971). Formal notice is not required when the defendant has actual knowledge of the nature of the contempt proceedings. In re Sadin, 509 F.2d 1252 (2d Cir. 1975); United States v. Handler, 476 F.2d 709 (2d Cir. 1973). However, rather than risk the possibility of misunderstanding, the notice requirements of Rule 42(b) should be strictly followed. See Universal City Studios v. N.Y. Broadway International Corp., 705 F.2d 94 (2d Cir. 1983). Cf. United States v. North, 621 F.2d 1255, n. 7 (3d Cir.

1980), cert. denied, 449 U.S. 866 (1981). In the event a defendant deems the charges made in the criminal contempt petition to be too indefinite, his remedy is to move the court for a bill of particulars. See Fox v. United States, 77 F.2d 210 (4th Cir. 1935), cert. denied, 298 U.S. 642 (1936).

The petition under Rule 42(b) must satisfy the basic requirements of "fair notice." United States v. United Mine Workers of America, 330 U.S. 258, 298-300 (1947). It must also state the "essential facts" constituting the criminal contempt charged. See United States v. J. Myers Schine, 260 F.2d 552, 557 (2d Cir. 1958), cert. denied, 358 U.S. 934 (1959); Carlson v. United States, 209 F.2d 209, 218 (1st Cir. 1954). The words "criminal contempt" need not be used in the petition or rule to show cause, so long as the contemnor realizes that a criminal contempt prosecution is contemplated. See United States v. Joyce, 498 F.2d 592, 595 (7th Cir. 1974). Although verification of the petition may be based upon information and belief, United Mine Workers of America, 330 U.S. at 296, it is considered good practice for the government to file an affidavit with the petition. See National Labor Relations Board v. Arcade-Sunshine Co., 122 F.2d 964, 965 (D.C.Cir. 1941).

It is unclear whether probable cause that a willful violation has occurred is a condition precedent to the commencement of a criminal contempt action. Initially, it should be noted that the vast majority of criminal contempt decisions make no

mention of such a requirement. However, in United States v. Kelsey-Hayes Co., 476 F.2d 265 (6th Cir. 1973), the court dismissed the case prior to trial on the basis of its determination that there was a lack of probable cause that a willful violation had occurred. The court in In re United Corporation, 166 F. Supp. 343 (D.Del. 1958), held that it was within the court's discretion to require a showing of probable cause before appointing an attorney to prosecute a criminal contempt action which was initiated by a private party, rather than the United States.

The prevailing view is that the petitioner is not required to attempt to obtain compliance with the decree before filing a criminal contempt action for the reason that an act of criminal contempt once committed may not be purged. In re Curtis' Petition, 240 F. Supp. 475, 483 (E.D. Mo. 1965), aff'd, 362 F.2d 999 (8th Cir.), cert. denied, 386 U.S. 914 (1966). Accordingly, a court may punish a party for criminal contempt even though the party eventually complies with the order. Gompers v. Bucks Stove and Range Co., 221 U.S. 418, 452 (1911). However, in United States v. Kelsey-Hayes Co., 476 F.2d 265 (6th Cir. 1973), the court noted, in the course of granting a motion to dismiss prior to trial, that its decision was prompted in part by what it contended to be the lack of fairness emanating from the failure of the government to attempt to obtain compliance with the decree prior to commencing the criminal proceeding.

To be held in criminal contempt for violation of a court order, the defendant must be an original party, one legally identified with an original party, or an aider and abettor of one of the above enumerated persons. Backo v. Local 281, United Brothers of Carpenters and Joiners, 438 F.2d 176, 180-81 (2d Cir. 1970), cert. denied, 404 U.S. 858 (1971); Reich v. United States, 239 F.2d 134, 137 (1st Cir. 1956), cert. denied, 352 U.S. 1004 (1957). But see Manness v. Meyers, 419 U.S. 449 (1975) (attorney giving good faith legal advice not to be found in contempt).

Participation by a prosecutor is ordinarily necessary to assist the court in the presentation of a criminal contempt case. The procedural requirements of Rule 42(b) of the Federal Rules of Criminal Procedure, and those requirements such as trial by jury imposed judicially in light of due process considerations, give rise to the need for presentation of the evidence by an officer of the court appointed for prosecutive purposes. The United States Attorney naturally assumes the role of prosecutor when he initiates an application for a show cause order under Rule 42(b). However, in a number of circumstances involving the disobedience of judicial authority outside the presence of the court, contempt proceedings are initiated sua sponte by the court or by private litigants for whose benefit such orders have issued.

In the great majority of cases the dedication of the executive branch to the preservation of respect for judicial authority makes the acceptance by the United

MOTION FOR CONTEMPT OF COURT - 13

States Attorney of the court's request to prosecute a mere formality; however, there may be sound reasons in a given case for the United States Attorney to decline participation in the proceedings and for the prosecution to be conducted on behalf of the court by private counsel appointed by the court for this purpose. On a case-by-case basis, the United States Attorney should evaluate not only the propriety of his participation in 18 U.S.C. § 401 proceedings, but also the interest of the government as a litigant vis-a-vis the clear duty of the United States Attorney to preserve respect for the authority of the federal court upon which successful law enforcement relies.

It is generally agreed that some kind of wrongful intent is required to sustain a criminal contempt conviction. McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949). See also Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 782-783 (9th Cir. 1983). There must be a willful, contumacious, or reckless state of mind to warrant conviction for criminal contempt. In re Joyce, 506 F.2d 373 (5th Cir. 1975). Willfulness is defined as a deliberate or intended violation, as distinguished from an accidental, inadvertent or negligent violation. Vaughn v. City of Flint, 752 F.2d 1160, 1168 (6th Cir. 1985). The willfulness element of criminal contempt requires proof of a volitional act done by one who knows or should reasonably be aware the conduct was wrongful. Rojas v. United States, 55 F.3d 61 (2nd Cir. 1995).

MOTION FOR CONTEMPT OF COURT - 14

In many cases it has been held that general criminal intent is all that is required to satisfy the scienter element in a criminal contempt action. See United States v. Fidanean, 465 F.2d 755 (5th Cir.), cert. denied, 409 U.S. 1054 (1972); United States v. Custer Channel Wing Corporation, 376 F.2d 675, 680 (4th Cir. 1967), cert. denied, 389 U.S. 850. That the acts were volitional and done with an awareness that they were unlawful shows a sufficient degree of intent, regardless of motive. See United States v. Patrick, 542 F.2d 381, 389 (7th Cir. 1976), cert. denied, 430 U.S. 931 (1977). On the other hand, authority exists for the proposition that a specific or flagrant intent to violate a decree is essential to a criminal contempt action. See United States v. Kelsey-Hayes Company, 476 F.2d 265 (6th Cir. 1973); In re Floersheim, 316 F.2d 423, 428 (9th Cir. 1963).

The lack of knowledge of the decree's existence at the time the defendant acted contrary thereto, or the lack of knowledge with respect to the occurrence of the violative acts, ordinarily exonerates the defendant of criminal liability. In re Joyce, 506 F.2d 373; Yates v. United States, 316 F.2d 718, 723 (10th Cir. 1963). It is doubtful, however, whether either of these defenses could be successfully employed if the defendant were an original party, as opposed to an aider and abettor, or if knowledge of a violation of the decree could have been obtained through an exercise of reasonable diligence.

MOTION FOR CONTEMPT OF COURT - 15

If the decree is ambiguous, the defendant may assert as a defense that there was a lack of fair notice with respect to the proscribed conduct. See United States v. Wefers, 435 F.2d 826, 830 (1st Cir. 1970). The "mistaken construction must be one which was adopted in good faith and which, given the background and purpose of the order, is plausible." United States v. Greyhound Corp., 508 F.2d 529, 532 (7th Cir. 1974).

Section 3282 of Title 18 applies a five-year statute of limitations to all criminal contempt actions encompassed by 18 U.S.C. § 401. If, however, the contemptuous act also constitutes a criminal offense under any statute of the United States or under the laws of any state in which the act was committed, then the contempt must be prosecuted under 18 U.S.C. § 402. Under 18 U.S.C. § 3285, a one-year statute of limitations applies to contempt actions brought under 18 U.S.C. § 402. It should be noted, however, that 18 U.S.C. § 402 is inapplicable to "contempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States."

The "continuing act" concept is applicable to criminal contempt actions. United States v. J. Myer Schine, 260 F.2d 552, 555-56, (2nd Cir. 1958), cert. denied, 358 U.S. 934 (1959).

According to the majority view, acting in good faith upon the advice of counsel is not a defense to an action for criminal contempt. See United States v. Remini, 967 F.2d 754 (2d Cir. 1992); United States v. Seavers, 472 F.2d 607 (6th Cir. 1973); United States v. Dimauro, 441 F.2d 428 (8th Cir. 1971); United States v. Snyder, 428 F.2d 520, 522 (9th Cir. 1970), cert. denied, 400 U.S. 903 (1970); United States v. Goldfarb, 167 F.2d 735 (2d Cir. 1948). Good faith reliance upon the advice of counsel may, however, be considered in mitigation of punishment. United States v. Custer Channel Wing Corp., 247 F. Supp. 481, 503 (D. Md. 1965), aff'd, 376 F.2d 675 (4th Cir.), cert. denied, 389 U.S. 850 (1967). Some decisions have held that good faith reliance upon the advice of counsel is a complete defense in a criminal contempt action. In re Eskay, 122 F.2d 819 (3d Cir. 1941).

## **STATEMENT OF THE CASE**

In this Motion, Plaintiff in the original case, Mr. Paul Murphy MA.IS.; asks this court to vindicate its authority and punish for disobedience already accomplished the Defendant, CNMI DPS Commissioner Robert Guerrero. On September 28, 2016, Judge Ramona Manglona, in Murphy v. CNMI Government No. 1:2014cv00026 - Document 109 page 53 subsection (a) line 14, ruled the registration of firearms unconstitutional. The Defendant is an original party to case No.1:2014cv00026.

MOTION FOR CONTEMPT OF COURT - 17

On November 5, 2019, the Plaintiff applied for a renewal of his firearms I.D. under duress and under protest. This duress and protest was made known to the Defendant by attaching a notice letter to the firearms application form. On the CNMI DEPARTMENT OF PUBLIC SAFETY FORM A: APPLICATION FOR FIREARM OWNER'S ID CARD page 7 of 9 Section 3 line 2; the application expressly states, "You may keep and posses only the firearms you register." The Plaintiff specifically underlined this portion of the application in addition to attaching the notice letter (see App. pp.i-ix). Not registering a firearm still remains a civil infraction punishable by a fine of five hundred dollars under PL 19-73 subsection 701(c)(1) on page 24 lines 5 and 6. Public Law 19-73 was written one month after the Federal Court ruling with full knowledge of this Court's decision on the registration of firearms. The application for firearms owner ID card was also updated after this court's ruling on this issue, but it still maintained the registration of firearms in order to possess a firearm.

Beginning on November 9, 2016, the Plaintiff submitted a letter of protest (App. p.x) along with my firearms ID application to the Defendant notifying him that the firearms licensing scheme, which included and still includes the registration of firearms, was unconstitutional and that the Plaintiff was only applying for the license because he would be unable to obtain his firearms and ammunition any other way.

MOTION FOR CONTEMPT OF COURT - 18

On June 12, 2017, the Plaintiff submitted a Notice of Payment (App.p.xi) for items that were still not returned to him, namely one thousand seven hundred eighty five rounds of ammunition. The Plaintiff noted that he provided CNMI DPS with more than ninety days to return the items or reimburse him for the items or to communicate with him regarding this issue; to this date no return, reimbursement, or communication has been provided to the Plaintiff.

On November 9, 2016, the Plaintiff submitted a Freedom of Information Act request (App. p.xii) asking for how many new Weapons Identification Cards were registered, re-registered, and added thereto since the starting point of the registration scheme. He was unable to receive any information from that request. He resubmitted the Freedom of Information Act request (App. p.xiii) on April 28, 2017, and was able to receive the information on May 3, 2017. The Firearms and Records Supervisor, Officer Elma K. Tenorio, explained that there weren't any records available prior to 2009. The Supervisor explained and signed to her explanation that Juana Leon Guerrero cleared out the records (App.xiv). The records were cleared out in violation of the CNMI Weapons Control Act Title 6 Division 2 Chapter 2 Article 1 §2218(a). The total provided for 2009 to May 2017 was 322 new ID's, 2,573 Renewals, and 156 additional firearms add-ons.

On June 12, 2017, the Plaintiff submitted a Freedom of Information Act request (App.xv) to the CNMI DPS Firearms and Records Section requesting

information regarding the number of Weapons Identification Cards applications were submitted since January 9, 1978. A total of 6,586 were submitted since January of 2013, which is the earliest date they were able to record. January of 2013 was the earliest date of record because previous records dating to before this time were disposed. There were 5,425 applications for additional firearms. These numbers were verified on June 28, 2017, by the Criminal Records Supervisor Elma K. Tenorio (App. p.xvi).

On May 18, 2018, the Plaintiff wrote an In-Confidence Request for Clarification (App. p.xvii) regarding the enforcement of certain sections of the CNMI S.A.F.E. Act which expressed that certain sections of the law would not apply if firearms were "properly registered". He did not received a reply.

On June 11, 2018, the Plaintiff submitted a Freedom of Information Act request (App. p.xviii) form to the CNMI Records and Firearms Section requesting information regarding the registration of firearms and the number of "high capacity magazines" confiscated". He did not receive a reply.

On June 12, 2018, the Plaintiff submitted a notice (App. p.xix) to the Office of the Attorney General and to the DPS Commissioner (App. p. xx) that the registration of firearms was still being enforced and that after this court found such practices to be unconstitutional. In addition to the written notice the Plaintiff, on three different occasions, verbally notified the Firearms and Records Section of the

unconstitutionality of the registration of firearms. On one occasion, the Plaintiff verbally notified the Defendant of the unconstitutionality of the registration of firearms and of his professional and personal liability.

On June 12, 2018, the Plaintiff submitted a Bill for an Act (App. pp. xxi-xxiii) to repeal certain sections of the SAFE Act to then Senator Arnold I. Palacios and then Representative Francisco C. Aguon for their consideration. No action was taken.

On February 26, 2019, the Plaintiff submitted an Open Government Act request (App. p.xxiv) to the Defendant. The Plaintiff requested official information about how many firearms have been registered from February 6, 2017 to February 22, 2019. The total number of firearms registered was 102 (App. p.xxv). The information was compiled by POI. Z. Magofna and was verified by Lt. J. DL. Guerrero on April 1, 2019.

On November 5, 2019, The Plaintiff submitted a letter (App. pp. xxvi-xxix) to Representative Joel Camacho and Representative Lorenzo Deleon Guerrero following up on a meeting by the Commonwealth Ordnance Group (a non-profit civil liberties group) with representatives regarding the repeal of certain sections of the SAFE Act. The Plaintiff did not received any reply.

On November 5, 2019, the Plaintiff submitted an application for renewal of the firearms I.D. with which was attached a notice letter (App.i-ix) to the

Defendant explaining that the Plaintiff was submitting the application under duress and under protest. The letter expressed specifically that the current firearms regulatory scheme, central to which is the registration of firearms, was found by this court to be unconstitutional; yet it is still being enforced three years after this court's ruling. In the Plaintiff's Application for Firearm Owner's ID Card he specifically underlined the portion "You may keep and posses only the firearms that you register." found in Section 3 Form A page 7 of 9. The Defendant being enjoined against such actions signed and approved the application and still has not replied to any of the notices provided. The Defendant's signature is found on Section 5 Form A page 9 of 9.

On December 11, 2019, the Plaintiff submitted an Open Government Act request (App. p.xxx) to the Defendant and to the Firearms and Records Section requesting official information about how many firearms have been registered with the CNMI DPS from November 2018 to November 2019. The total number of firearms registered was 88 (App. p.xxxi). This information was compiled by P03 Jenny Fukugub on December 11, 2019 and was verified by Lt. Josepha Deleon Guerrero on December 16, 2019.

## SUMMARY OF ARGUMENT

The Defendant was enjoined against enforcing the registration of firearms. The Defendant registered at least one hundred firearms. The judgement provided by this court is a clear, unambiguous, and reasonably specific order; both citing the specific Commonwealth code and expressing the spirit of the judgement for clarity in administration. The Defendant was enjoined by this Court from enforcing the registration of firearms, was notified by the Plaintiff of the unconstitutionality of the registration of firearms after this Court's order was delivered, and was specifically provided a letter attached to the Plaintiff's firearms application expressing duress and protest over the registration of firearms; the Defendant signed the application authorizing the registration of the firearm. The Defendant willfully violated a clear, unambiguous, and reasonably specific order which was not an order for compliance to action; but it was a prohibition on enforcing the registration of firearms.

## ARGUMENT

**I.     THE DEFENDANT CNMI DPS COMMISSIONER ROBERT GUERRERO MEETS ALL THREE REQUIREMENTS FOR CRIMINAL CONTEMPT OF COURT [18 U.S.C. § 401(3)].**

There are three essential elements under 18 U.S.C. § 401(3). They are: (1) there must be a violation; (2) of a clear and reasonably specific order; and (3) the

MOTION FOR CONTEMPT OF COURT - 23

violation was willful. United States v. Nynex Corp., 8 F.3d 52, 54 (D.C. Cir. 1993).

In this court's judgment 1:20cv00026 document 109, page 19-20 lines 23 to line 5, Judge Manglona writes, "The Commonwealth's firearm registration provision, on the other hand, does not pass intermediate scrutiny. Unlike the licensing scheme, which likely prevents felons from obtaining firearms, the registration provision only informs the Commonwealth that a certain individual has a certain firearm. But that does not prevent dangerous individuals from getting their hands on firearms or otherwise safeguard public safety, and so does not further the Commonwealth's stated goals." On page 54 of the same document, the Court declared 6 CMC § 2204, to the extent that it requires the registration of firearms, unconstitutional. It was ruled a violation of the Second and Fourteenth Amendments to the United States Constitution, made applicable in the CNMI by the Covenant. The Defendants Guerrero and Larson are permanently enjoined from enforcing the provision of the Commonwealth Code that have been declared unconstitutional. "Enforce" is defined by The Law Dictionary.com as: to put into execution; to cause to take effect; to make effective; as, to enforce a writ, a judgment, or the collection of a debt or fine (Breitenbach v. Bush, 44Pa. 320, 84 Am. Dec. 442; Emery v. Emery, 9 How. Prac. (N. Y.) 132; People v. Christerson, 59 111. 158.).

MOTION FOR CONTEMPT OF COURT - 24

The Defendant put into execution, caused to take effect, made effective provisions in 6 CMC § 2204 relating to the registration of firearms though repealed are found in PL 19-73 § 601(a) p.3, §701(b)(4) p.23, and §701(9)(c). Subsection (a) of 6 CMC § 2204 states: "No person may acquire or possess any firearm, dangerous device or ammunition unless the person holds an identification issued pursuant to this article. The identification card is evidence of the holder's eligibility to possess and use or carry firearms, dangerous devices, or ammunition." Public Law 19-73 § 601(a) and § 606(c) reads, "No person may acquire or possess any firearm within the Commonwealth without having in his or her possession a current Firearm Owner's Identification Card previously issued in his or her name by the Department of Public Safety under the provisions of this Division." and "(c) The Department of Public Safety is authorized to include any other information that it deems relevant on the Firearm Owner's Identification Card." In order to obtain an identification card, a qualified individual must fill out a CNMI DEPARTMENT OF PUBLIC SAFETY FORM A: APPLICATION FOR FIREARM OWNER'S ID CARD. In this application on page 7 of 9 Section 3 line 2 the application expressly states, "You may keep and posses only the firearms you register." These applications require the signature of the Defendant for approval. After this Court's ruling there have been at least one hundred firearms registrations. These registrations are on record evidenced by two Open

Government Act requests made by the Plaintiff to the CNMI Firearms and Records Section.

The Defendant put into execution, caused to take effect, made effective provisions in 6 CMC § 2204(b)(8) relating to the registration of firearms though repealed are found in PL 19-73 Chapter 7 Firearm Registration Database §701(b)(4). Subsection (b)(8) states the following: "The manufacturer, model, type and serial number of the firearm.". Subsection 701(b)(4) states the following: "The caliber, make, model, manufacturer's identification number, serial number, and any other identifying marks on the firearm;". Section (b) requires the firearms identification card to have on its face all the elements found in subsection (8). The reading of subsection (8) as being the registration of firearms constitutes a narrow construction of the reading for the judgment provided by this court. This element, without reading any other part of the judgment provided by this court, could read that the prohibition of the registration of firearms in subsection (8) means to leave the names of the manufacturer, model, type, and serial number of the firearm off of the firearms ID card. Under PL 19-73 Chapter 7 Firearm Registration, the requirement to register all elements of prohibited provisions found in 6 CMC § 2204(b)(8) are present. Even using the narrowest construction of reading the Defendant still enforced 6 CMC § 2204(b)(8) under elements of prohibited

MOTION FOR CONTEMPT OF COURT - 26

provisions found in PL 19-73 §701(b)(4) evidenced by the elements of subsection (8) on the current firearms ID's attached (Exhibit).

The Defendant put into execution, caused to take effect, made effective provisions in 6 CMC § 2204(c) relating to the registration of firearms though repealed are found in PL 19-73 Chapter 7 Firearm Registration Database §601(a). Subsection (c) of 6 CMC § 2204 states the following: "An applicant for an identification card shall make application for it on a form approved by the Department of Public Safety and supply any information necessary to afford the issuing agency reasonable opportunity to ascertain the facts required to appear on the face of the identification card, and to determine whether the applicant complies with all requirements of his article to possess, use, or carry firearms, dangerous devices or ammunition, as the case may be." Subsection 601(a) states the following: ""No person may acquire or possess any firearm within the Commonwealth without having in his or her possession a current Firearm Owner's Identification Card previously issued in his or her name by the Department of Public Safety under the provisions of this Division." In CNMI Case 14-00026 document 109 page 19 and 20 lines 23 through 5 this Court explains the following: "The Commonwealth's firearm registration provision, on the other hand, does not pass intermediate scrutiny. Unlike the individual licensing scheme, which likely prevents felons from obtaining firearms, the registration provision only informs the

Commonwealth that a certain individual has a certain firearm. But that does not prevent dangerous individuals from getting their hands on firearms or otherwise safeguard public safety, and so does not further Commonwealth's stated goals." Furthermore on page 24 lines 18 and 19 this Court states the following: "… Firearms Identification Card until the firearms are registered, it violates the Second Amendment." The Defendant approved the application for an identification card entitled the CNMI DEPARTMENT OF PUBLIC SAFETY FORM A: APPLICATION FOR FIREARM OWNER'S ID CARD. In this application on page 7 of 9 Section 3 line 2 the application expressly states, "You may keep and posses only the firearms you register." This Court expressly stated that the registration prerequisite for firearms possession violates the Second Amendment. The Defendant approved the current firearms application for use by DPS and continues to enforce the use of this application. The approval of an official DPS form by the Defendant and its continued use is a willful and deliberate action. As stated in this Court's opinion the registration of firearms does not further the Commonwealth's stated goals and does not prevent dangerous individuals from getting their hands on firearms and is a violation of the Second Amendment as well as a violation of the prohibition by this court from enforcing such provisions.

   In both the specific letter of this Court's judgment and in the expressed reasoning of the judgment (the spirit of the judgment); the Defendant continues to

MOTION FOR CONTEMPT OF COURT - 28

enforce provisions of 6 CMC § 2204 though repealed are found in PL 19-73

Chapter 7 Firearm Registration Database §601(a).

The Defendant meets the three essential elements under 18 U.S.C. § 401(3) for

criminal contempt of court: (1) there must be a violation; (2) of a clear and

reasonably specific order; and (3) the violation was willful. United States v. Nynex

Corp., 8 F.3d 52, 54 (D.C. Cir. 1993).

## II. THE DEFENDANT CNMI DPS COMMISSIONER ROBERT GUERERRO SHOULD BE HELD IN CRIMINAL CONTEMPT OF COURT TO VINDICATE THE AUTHORITY OF THIS COURT FOR DISOBEDIENCE ALREADY ACCOMPLISHED.

A contempt is criminal when punishment by way of fine or imprisonment is

deemed imperative to vindicate the authority of the court. In Shillitani v. United

States the US Supreme Court expressed, "We believe that the character and

purpose of these actions clearly render them civil, rather than criminal, contempt

proceedings. See Penfield Co. v. Securities & Exchange Comm'n, 330 U. S. 585,

330 U. S. 590 (1947). As the distinction was phrased in Gompers v. Bucks Stove &

Range Co., 221 U. S. 418, 221 U. S. 449 (1911), the act of disobedience consisted

solely "in refusing to do what had been ordered," i.e., to answer the questions, not

"in doing what had been prohibited." And the judgments imposed conditional

imprisonment for the obvious purpose of compelling the witnesses to obey the

orders to testify. When the petitioners carry "the keys of their prison in their own

MOTION FOR CONTEMPT OF COURT - 29

pockets," In re Nevitt, 117 F. 448, 461 (C.A.8th Cir. 1902), the action "is essentially a civil remedy designed for the benefit of other parties and has quite properly been exercised for centuries to secure compliance with judicial decrees." The standard of review for criminal contempt is whether or not the contempt is an action to gain compliance or whether the contempt is in relation to "in doing what had been prohibited". The Defendant was prohibited from enforcing the registration of firearms. Compliance with this court's order is in direct relation to the prohibition of enforcing the registration of firearms. Finding the Defendant in contempt is not to gain compliance from the Defendant for any action, but a clear and direct vindication of the authority of the court and punishment for disobedience already accomplished.

In US v Nynex Corp. the DC Circuit Court of Appeals clarified that the Government must prove each and every element of the office, and "contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous …" Armstrong v. Executive Office of the President, Office of Admin., 1 F.3d 1274, 1289 (D.C.Cir. 1993) (quoting Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 16 (1st Cir.1991)). In this case the Defendant is permanently enjoined from enforcing provisions of the Commonwealth Code that have been declared unconstitutional.

Commonwealth Code § 2204(a) and (b)(8) relating to the registration of firearms though repealed are found in PL 19-73 § 601(a) p.3, §701(b)(4) p.23, and §701(9)(c). Subsection (a) of 6 CMC § 2204 requires a firearms ID in order to possess a firearm. Subsection (b) explains that identification cards are issued only by the Department of Public Safety pursuant to regulations made by the Department of Public Safety in the manner which is or may be provided by law. This regulation is administered through the Firearms Application form. On the CNMI DEPARTMENT OF PUBLIC SAFETY FORM A: APPLICATION FOR FIREARM OWNER'S ID CARD page 7 of 9 Section 3 line 2 the application expressly states, "You may keep and posses only the firearms you register." This application was approved after the registration of firearms was found unconstitutional. The information required in subsection (8) also found in subsection 701(b)(4) of PL 19-73; regarding the manufacturer, model, type, and serial number requirement is kept on the DPS Firearms and Records Database. This is by definition a registry of firearms. Subsection (c) having provisions found in PL 19-73 § 601(a) again states that the applicant must make application on a form approved by the Department of Public Safety and supply information showing compliance with the requirement therein. The application for firearms onwer's ID card specifically requires the registration of firearms listing the manufacturer, model, type, and serial number information as requirements for

MOTION FOR CONTEMPT OF COURT - 31

registration. These are literally verbatim registrations of firearms: documented, signed, and approved by the Department of Public Safety (namely the Defendant), issued publicly after the judgment, administered at least one hundred times, and clearly a violation of an order that is clear and unambiguous in both letter and spirit.

A contempt is criminal when punishment by way of fine or imprisonment is deemed imperative to vindicate the authority of the court.

> "When the legislative and executive powers are united in the same person, or in the same body of magistrates, there can be not liberty; because apprehensions may arise, lest the same monarch or senate should enact tyrannical laws, to execute them in a tyrannical manner. Again, there is no liberty, if the judiciary power be not separated from the legislative and executive." Charles de Montesquieu

On the 28th day of September 2016 this Court exercised its judicial power in judging the registration of firearms unconstitutional. On November 10, 2016, The legislature writes in Public Law 19-73 (SAFE Act II) lines 3 through 7 the following: "While the current registration provisions of the Weapons Control Act remain in effect, the Legislature finds there is a pressing need to enact new provisions for the registration of firearm owners and individual firearms in order to keep firearms out of the hands of individuals such as felons, drug addicts, sexual predators, and perpetrators of domestic violence." Also in the same legislation in lines 25 through 29 the legislature writes: "The Legislature's express goal is to

protect the lives, safety, and welfare of the People of the Commonwealth by creating a strict registration schemes, which comply with the Second Amendment, for the licensing of firearm owners, licensing and regulation of firearm vendors, and the registration of individual firearms in the Commonwealth."

Both the Legislative and Executive branches agreed to the passage of Public Law 19-73. The discussion among the Legislative and Executive for this law came after this Court found elements of the law unconstitutional, yet the law passed still containing such unconstitutional provisions. The Plaintiff brought these unconstitutional provisions to the attention of both the Legislative and Executive branches in the forms of notices, electronic communication, verbal communication, Freedom of Information Act requests, Open Government Act requests, and even writing bills for legislative action. The Plaintiff also specifically brought notice to the Defendant regarding these unconstitutional provisions. The Defendant is a chief part of the executive branch. The Defendant's enforcement of the registration of firearms presents a willful disregard for this Court's ruling or worse yet a wholesome disregard for the authority of this Court. This contempt is not a mere matter of register, but has thickened into a grave matter of power and the balance thereof.

The primary aim of a criminal contempt action is vindication of the authority of the court and punishment for disobedience already accomplished, the general rule

MOTION FOR CONTEMPT OF COURT - 33

is that purging of contempt is not a complete defense in a criminal contempt action. Consequently, a person found guilty of criminal contempt may be sentenced to a fixed and definite term of imprisonment, or be required to pay an unconditional fine. See United States v. Shipp, 203 U.S. 563 (1906); Skinner v. White, 505 F.2d 685, 689 (5th Cir. 1974). Due to both the Legislative and Executive branches of government passing laws found to be unconstitutional by this Court and the Defendants willingness to enforce those laws for more than three years after being enjoined against such actions; in order to vindicate the authority of this Court the Defendant should be found guilty of criminal contempt of court.

## **CONCLUSION**

"The balance of power is the scale of peace." Thomas Paine

For over a decade a specific liberty of the people of the CNMI has been violated; possibly through ignorance or prohibited out of fear. This Court in due conscience for public safety and honest reverence for liberty ruled provisions for the registration of firearms unconstitutional. The Defendant without such reverence in this regard, according to fact and law stated above, and showing a usurpation of authority not given to the executive; enforced provisions which this Court enjoined against. The Plaintiff prays this Court to action for a motion to find the Defendant in criminal contempt of court, to vindicate its authority, and to restore balance.